UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT WAYNE HUGHES,

Plaintiff,

v.

KEVIN BOVENCAMP, et al,

Defendants.

CASE NO. 3:18-cv-05717-RJB-JRC

REPORT AND RECOMMENDATION

NOTED FOR: APRIL 24, 2020

The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR1, MJR3 and MJR4. This matter is before the Court on the parties' cross motions for summary judgment. *See* Dkts. 34; 37.

Plaintiff Robert Wayne Hughes, who is currently incarcerated at Washington State Penitentiary ("WSP"), alleges that Department of Corrections ("DOC") medical providers refused to provide adequate medical treatment for plaintiff's left bicep injury and that such constituted deliberate indifference to his serious medical needs in violation of the Eighth

1    Amendment. *See* Dkt. 10. Plaintiff further alleges that DOC staff violated his due process rights

2    under the Fourteenth Amendment by refusing to provide remedial-based medical treatment per

3    DOC policy and by refusing to adequately investigate plaintiff's grievances concerning his

4    medical care. *See id.* After reviewing the parties' cross-motions and relevant record, the Court

5    finds that plaintiff fails to overcome defendants' showing that there are no genuine issues of

6    material fact remaining in this case. Based on the undisputed facts, even in the light most

7    favorable to plaintiff, the claims against each defendant (1) fail to establish that any defendant

8    acted with deliberate indifference to plaintiff's bicep injury; and (2) fail to establish that plaintiff

9    was denied any due process right to the adequate administration of the DOC grievance process.

10    Therefore, the Court recommends granting defendants' cross-motion for summary judgment

11    (Dkt. 37), denying plaintiff's motion for summary judgment (Dkt. 34), and dismissing this matter

12    with prejudice.

13                                    **PROCEDURAL HISTORY**

14          Plaintiff, who proceeds *pro se* and *in forma pauperis*, initiated this matter on August 31,

15    2018. *See* Dkt. 1. In his amended complaint, plaintiff asserts violations of his Eighth and

16    Fourteenth Amendment rights based on the actions of defendants Kevin Bovencamp (Assistant

17    Secretary of DOC Health Services), Dr. Kenneth Sawyer (DOC Consulting Orthopedist), Brandi

18    Blair (Corrections Specialist 2), Kenneth Moore (Physician Assistant-Certified), Edith Kroha

19    (Advanced Registered Nurse Practioner), Dr. F. John Smith (Facility Medical Director), and

20    Michael Holthe (Corrections Specialist 2). *See* Dkt. 10, at 6, 13–14. Plaintiff requests $950,000

21    in compensatory damages, $950,000 in punitive damages, $950,000 in "declaratory" damages,

22    and injunctive relief. *See id.* at 6. The parties have engaged in some discovery. *See* Dkts. 40–

23    41, 44–45.

24

1    Plaintiff and defendants have now filed cross motions for summary judgment.  *See* Dkts.

2    34, 37.  In support of his motion, plaintiff submitted his signed declaration, DOC custody and

3    medical records, written DOC complaints and grievances, news articles regarding DOC medical

4    treatment, and a copy of the 2019 Washington DOC Health Plan.  *See* Dkts. 35–35-7.  Following

5    defendants' response to plaintiff's motion for summary judgment and cross-motion for summary

6    judgment (Dkt. 37), the Court provided a notice of dispositive motion pursuant to *Rand v.*

7    *Rowland*, 113 F.3d 1520 (9th Cir. 1997) and *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n. 14 (9th

8    Cir. 2003).  *See* Dkt. 39.

9    Plaintiff filed a reply to defendants' response and cross-motion on November 22, 2019,

10   wherein he requested that defendants' response to plaintiff's motion be stricken, and he

11   requested additional time to complete discovery.  *See* Dkt. 40.  After reviewing defendants' reply

12   to plaintiff's reply brief (*see* Dkt. 41), the Court ordered defendants to submit responses to

13   outstanding discovery requests and allowed the parties thereafter to submit sur-replies.  *See* Dkt.

14   43.  Plaintiff filed his sur-reply on January 31, 2020, and requested that the Court appoint an

15   arbitrator to mediate discovery.  *See* Dkt. 44.  Defendants filed their sur-reply on February 13,

16   2020, opposing plaintiff's request that the Court appoint an arbitrator.  *See* Dkt. 45.

17   **FACTUAL BACKGROUND**

18   The Court begins by summarizing the facts of this case from the parties' pleadings,

19   summary judgment briefing, and the evidence submitted in support thereof.  The facts are

20   undisputed except as noted.

21   **I.      Plaintiff's Initial Injury and Treatment at CBCC**

22   On September 3, 2017, while housed at Clallum Bay Correctional Center ("CBCC"),

23   plaintiff injured his left bicep while performing assigned work duties.  *See* Dkt. 10, at 6.  Plaintiff

24

1  alerted CBCC staff to his injury, and a CBCC registered nurse examined plaintiff's injury the

2  same day. *Id.* On September 5, 2017, Physician Assistant Jackie Peterson examined plaintiff's

3  injury and initially diagnosed the injury as "ruptured proximal bicep tendon." *See* Dkts. 10, at 7;

4  35-3, at 12. Following the initial diagnosis, plaintiff's arm was placed in a sling, and he was

5  given ibuprofen and ice. *See* Dkt. 35-3, at 12. On September 7, 2017, Peterson sent defendant

6  Sawyer (an orthopedist) a consultation report, noting her initial diagnosis of plaintiff's injury,

7  pictures of the injury, and plaintiff's self-described "extreme pain" level, as well as describing

8  pain medication, ice, slings, and splints provided to plaintiff. *Id.* In the consultation report,

9  Peterson asked defendant Sawyer if the injury was "something that needs to be repaired?" *Id.*

10         In response to Peterson's report, without physically examining plaintiff, defendant

11  Sawyer confirmed the initial diagnosis of a proximal biceps tendon rupture. Dkts. 35, at 7; 35-3,

12  at 12. Defendant Sawyer also stated that "[s]urgical indications for that condition are few. . . .

13  [R]eturn to full function can be expected. . . . [I]n the absence of penetrating trauma, there

14  would be no indication for surgical nerve exploration." Dkt. 35-3, at 12. Defendant Sawyer

15  further stated that "[i]nitial treatment is . . . resting the arm in a sling and medical treatment for

16  analgesia. . . . [Range of motion ("ROM")] exercises can start as soon as his symptoms allow

17  but no later than 3 weeks. Strengthening can begin at 6 weeks." *Id.*

18         On September 18, 2017, plaintiff filed an emergency complaint for surgery for his injured

19  arm, which was denied because "surgery [was] not required."[1] *See* Dkts. 10, at 8; 40, at 13. The

20  same day, following denial of the emergency complaint, plaintiff filed an emergency appeal

21  requesting "immediate orthopedic specialist consult for surgery to repair [his] arm." Dkts. 10, at

22

23  _____

24  [1] Although plaintiff argues that surgery was necessary, the fact of the denial of plaintiff's
   emergency complaint is not disputed. *See* Dkts. 10, at 8; 40, at 13.

1  8; 35-7, at 13.  Defendant Kroha, an advanced registered nurse practitioner, responded that

2  plaintiff's complaint "[did] not meet criteria of emergency.  This is the standard of care in the

3  community."  Dkt. 35-7, at 13.  Plaintiff appealed defendant Kroha's response on September 19,

4  2017, and defendant Holthe responded that "the 'emergency' process [had] been exhausted" and

5  that plaintiff's "complaint is currently being investigated through the normal process at Level I,"

6  referring to a Level I grievance that plaintiff filed on September 18, 2017.  *Id.* at 12.  In his Level

7  I grievance, plaintiff requested "immediate orthopedic consult for surgery to repair [his] arm."

8  Dkt. 35-7, at 12.

9          On September 27, 2017, Peterson sent defendant Sawyer a second consultation report

10  regarding plaintiff's bicep injury.  *See* Dkts. 10, at 8; 35-3, at 21.  In the report, Peterson notes

11  that plaintiff "still compl[ained] of severe pain in the arm and is asking for narcotics. . . .  [F]rom

12  what I've read [the injury] isn't a particularly painful condition."  Dkt. 35-3, at 21.  Peterson said

13  she sent the same consult to Rubicon MD for an eConsult.  *See* Dkts. 10, at 8; 35-3 at 18, 21–22.

14  Defendant Sawyer reviewed his prior consult regarding plaintiff's injury, Peterson's report, and

15  the Rubicon MD consult, and he suggested "shoulder x-rays to rule out some other unexpected

16  pathology."  Dkt. 35-3, at 21.  Defendant Sawyer further suggested that "[c]ustody observation

17  may shed more light on [plaintiff's] current pain level and ability to function."  *Id.*; *see* Dkt. 10,

18  at 8–9.

19          On October 11, 2017, defendant Holthe, a corrections specialist 2 at CBCC, responded to

20  plaintiff's September 2017 Level I grievance and stated that defendant Sawyer and Dr. B.

21  Weston found that "surgery was not deemed medically necessary."  Dkt. 35-7, at 12.  Defendant

22  Holthe further responded that "[t]he investigation concludes that [plaintiff has] received adequate

23  care."  *Id.*  Plaintiff appealed this response to Level II, requesting surgery and "$100,000.00 for

24

1    denial of proper medical care." *Id.* at 10.  A health services manager 2 investigated plaintiff's

2    Level II grievance and concluded that surgery was not necessary and that plaintiff "received

3    appropriate care as outlined in the Offender Health Care Plan." *Id.*

4         Plaintiff appealed this response to Level III.  *See id.* at 7.  Defendant Bovencamp and

5    Chief of Nursing reviewed plaintiff's Level III grievance and the appeals and responses,

6    consulted with health care providers, and researched treatment related to plaintiff's bicep injury.

7    *See id.*  On April 16, 2018, defendant Bovencamp and Chief of Nursing Services concluded that

8    "[n]on-surgical treatment is a reasonable option." *Id.* at 4.

9         **II.    Plaintiff's Treatment at WCC and MCC**

10        In early November 2017, plaintiff transferred from CBCC to Washington Correction

11   Center ("WCC") in route to Monroe Correctional Complex ("MCC").  *See* Dkt. 10, at 9.  While

12   at WCC, plaintiff's shoulder was x-rayed, and the images revealed no bone injury but did reveal

13   "contracted biceps." Dkt. 35-3, at 24, 32.  Plaintiff also received additional pain medication

14   while at WCC. *See id.* at 6–7.  On November 6, 2017, plaintiff transferred from WCC to MCC.

15   *See id.* at 16.  Plaintiff's MCC intake screening noted plaintiff's bicep injury. *See id.*  Plaintiff

16   continued to receive medical treatment at MCC, including pain medication, a sling, ice, and a hot

17   water bottle. *See* Dkt. 35-2, at 5–8.  On March 26, 2018, while "being escorted in full restraints"

18   at MCC, plaintiff "lost his footing" and exacerbated the injury to his left bicep. Dkt. 10, at 10.

19        **III.   Plaintiff's Treatment at WSP**

20        On March 28, 2018, plaintiff transferred from MCC to WSP, where defendants Smith and

21   Moore began treating plaintiff.  *See* Dkt. 10, at 10.  While at WSP, plaintiff continued to

22   complain about chronic pain in his left arm and requested a MRI.  *See* Dkt. 35-3, at 10–11.

23   Defendant Smith, the WSP facility medical director, explained to plaintiff that a MRI "would not

24

1   correct [plaintiff's] injuries." *Id.* at 11.  Defendants Smith and Moore prescribed plaintiff pain

2   medication, ice and a hot water bottle, and physical therapy for his left arm.  *See* Dkt. 35-3.

3   Defendant Moore, a physician assistant who treated plaintiff while at WSP, further

4   accommodated plaintiff's arm injury by allowing plaintiff to leave his shirt untucked.  *See, e.g.*,

5   Dkt. 35-2.  The facts regarding the MRI are disputed:  plaintiff avers that defendant Smith

6   ordered plaintiff a MRI some time after June 22, 2018; however, defendants deny this, and

7   records produced by plaintiff do not reflect any order.  *See* Dkts. 44, at 26, 30–59; 45, at 3–4.

8        On June 6, 2018, plaintiff filed another Level I grievance, this time related to his medical

9   treatment while housed as WSP and receiving treatment from defendant Moore.  *See* Dkts. 10, at

10   10; 35-7, at 3.  In the June 2018 Level I grievance, plaintiff continued to request a "consult with

11   a specialist" and a MRI.  *See* Dkt. 35-7, at 3.  In response to the grievance, defendant Smith

12   reviewed plaintiff's health record and stated that the "increase in medication ordered by

13   [defendant] Moore should give [plaintiff] some relief along with continuing home exercising

14   program in [plaintiff's] cell to strengthen the bicep." *Id.*

15        Plaintiff appealed this response to Level II, requesting the same remedy.  *Id.* at 2; Dkt.

16   10, at 10.  After investigation, a WSP superintendent agreed with defendant Smith's response.

17   *See* Dkt. 35-7, at 2.  Plaintiff then appealed to Level III, again requesting the same remedy.  *See*

18   *id.* at 1.  Defendant Bovencamp and a clinical nurse specialist investigated plaintiff's Level III

19   grievance and reviewed plaintiff's medical chart, the Offender Health Care Plan, and DOC

20   protocols and guidelines.  *Id.* at 1, 17.  In the October 18, 2018, written response to plaintiff's

21   Level III grievance, defendant Bovencamp and the clinical nurse specialist noted that since

22   plaintiff's injury in September 2017, plaintiff saw a health care practitioner 21 times while at

23   MCC and 9 times while as WSP, and that plaintiff continued to receive pain medication, physical

24

1    therapy, and home exercises. *Id.* at 17. Defendant Bovencamp and the clinical nurse specialist

2    further noted that "[s]urgery for this issue is usually not recommended per the latest evidence

3    based medical criteria, based on someone with similar symptoms." *Id.* Defendant Bovencamp

4    and the clinical nurse specialist concluded that plaintiff's "grievance is not supported," and

5    recommended that plaintiff "work with [his] health care providers to attain the best medically

6    necessary care for [plaintiff's] health conditions." *Id.*

7           On August 23, 2018, plaintiff filed a fourth Level I grievance, which he appealed to

8    Levels II and III. *See* Dkts. 35-7, at 15–16; 40, at 12. In the August 2018 grievance, plaintiff

9    again requested to see a specialist, get a MRI, and/or be presented to the Care Review

10   Committee. Dkt. 35-7, at 16. Defendant Bovencamp and a clinical nurse specialist reviewed

11   plaintiff's Level III grievance, the investigation, all appeals and responses, plaintiff's medical

12   chart, the Offender Health Plan, and all relevant policies. *See id.* The clinical nurse specialist

13   also communicated with plaintiff's health care practitioners at WSP. *See id.* Defendant

14   Bovencamp and the clinical nurse specialist concluded that "conservative treatment, including

15   Physical Therapy, NSAIDS [], passive/active range of motion exercises and muscle relaxants are

16   the interventions that should be implemented," and that plaintiff's grievance was not supported.

17   Dkts. 35-7, at 16; 40, at 12.

18                              **STANDARD OF REVIEW**

19          Summary judgment is appropriate if a moving party shows that "there is no genuine

20   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

21   R. Civ. P. 56(a). The materiality of a given fact is determined by the required elements of the

22   substantive law under which the claims are brought. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

23

24

1   242, 248 (1986).  Factual disputes that do not affect the outcome of the suit under the governing

2   law will not be considered.  *Id.*

3         Where there is a complete failure of proof concerning an essential element of the non-

4   moving party's case on which the nonmoving party has the burden of proof, all other facts are

5   rendered immaterial, and the moving party is entitled to judgment as a matter of law.  *Celotex*

6   *Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must view the

7   evidence presented through the prism of the substantive evidentiary burden").  However, when

8   presented with a motion for summary judgment, the court shall review the pleadings and

9   evidence in the light most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255 (citation

10   omitted), and "a pro se complaint will be liberally construed. . . ."  *Pena v. Gardner,* 976 F.2d

11   469, 471 (9th Cir. 1992) (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation

12   omitted).

13         Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party opposing

14   the motion must do more than simply show that there is some metaphysical doubt as to the

15   material facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  The

16   opposing party cannot rest solely on his pleadings but must produce significant, probative

17   evidence in the form of affidavits, and/or admissible discovery material that would allow a

18   reasonable jury to find in his favor.  *Id.* at n.11; *Anderson*, 477 U.S. at 249–50.  However,

19   weighing of evidence and drawing legitimate inferences from facts are jury functions, and not

20   the function of the court.  *See United Steel Workers of Am. v. Phelps Dodge Corps.*, 865 F.2d

21   1539, 1542 (9th Cir. 1989).  And if the moving party has not met its burden on summary

22   judgment, the Court will not grant the motion—even if there is no opposition to the motion.  *See*

23   *Henry v. Gill Inds.*, 983 F.2d 943 950 (9th Cir. 1993) ("Summary judgment may be resisted and

24

1    must be denied on no other grounds than that the movant has failed to meet its burden of

2    demonstrating the absence of triable issues.").

3        When parties file cross-motions for summary judgment, as the parties have done here,

4    each motion "must be considered on its own merits." *Fair Housing Council of Riverside County,*

5    *Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).  The court must review the evidence

6    submitted in support of each cross-motion. *Id.*  And, although the parties may each assert there

7    are no uncontested issues of material fact, the Court has a responsibility to determine whether

8    disputed issues of material fact are present. *Id.*; *Osborn v. Butler*, 712 F. Supp. 2d 1134, 1148

9    (D. Idaho 2010).

10       Because plaintiff is *pro se*, in ruling on the cross motions for summary judgment, the

11   Court will consider all of plaintiff's contentions offered in verified pleadings, where such

12   contentions are based on personal knowledge and set forth facts that would be admissible in

13   evidence, and where plaintiff attested under penalty of perjury that the contents of the verified

14   pleadings are true and correct. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

15                                   **DISCUSSION**

16   **I.    Section 1983 Principles**

17       In order to recover pursuant to 42 U.S.C. § 1983, a plaintiff must prove that: (l) the

18   conduct complained of was committed by a person acting under color of state law and (2) the

19   conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws

20   of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds,*

21   *Daniels v. Williams*, 474 U.S. 327 (1986).  A third element of causation is implicit in the second

22   element. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286–87 (1977);

23   *Flores v. Pierce*, 617 F.2d 1386, 1390–91 (9th Cir. 1980), *cert denied*, 449 U.S. 875 (1980).

24

1    A 42 U.S.C. § 1983 claim for damages against a person in his or her individual capacity

2    requires a showing that the person's conduct proximately caused the constitutional violation. *See*

3    *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). "A person deprives another 'of a

4    constitutional right, within the meaning of section 1983, if he does an affirmative act,

5    participates in another's affirmative acts, or omits to perform an act which he is legally required

6    to do that *causes* the deprivation of which [the plaintiff complains].'" *Leer v. Murphy*, 84 F.2d

7    628, 633 (9th Cir. 1988) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

8    **II.    Plaintiff's Eighth Amendment Claim**

9    Plaintiff alleges that his Eighth Amendment rights were violated because all defendants

10   were deliberately indifferent to his medical needs following injury to his left arm. *See* Dkt. 10, at

11   13.  Defendants argue that plaintiff's claim fails as a matter of law because defendants provided

12   plaintiff with appropriate medical care.  Dkt. 37, at 13.  Even viewed in the light most favorable

13   to plaintiff, the Court finds there is no genuine issue of material fact regarding plaintiff's Eighth

14   Amendment claims against defendants, and defendants are entitled to summary judgment as a

15   matter of law.

16   **A.    Eighth Amendment Legal Principles**

17   "It is undisputed that the treatment a prisoner receives in prison and the conditions under

18   which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v.*

19   *McKinney*, 509 U.S. 25, 31 (1993). "'[D]eliberate indifference to serious medical needs of

20   prisoners' violates the [Eighth] Amendment because it constitutes the unnecessary and wanton

21   infliction of pain contrary to contemporary standards of decency." *Id.* at 32 (quoting *Estelle v.*

22   *Gamble*, 429 U.S. 97, 104 (1976)).  An Eighth Amendment medical claim has two elements: (1)

23   "the seriousness of the prisoner's medical need and [(2)] the nature of the defendant's response

24

1    to that need." *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other*

2    *grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997) (en banc).

3          A medical need is serious "if the failure to treat the prisoner's condition could result in

4    further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin,* 974

5    F.2d at 1059 (*quoting Estelle,* 429 U.S. at 104).  If a plaintiff shows he suffered from a serious

6    medical need, he must then show the prison officials responded to the need with deliberate

7    indifference.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

8          Deliberate indifference to a prisoner's serious medical need requires "a purposeful act or

9    failure to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060.  In other words, "[a]

10   defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical

11   need." *Id*.  A prison official, accordingly, will not be found deliberately indifferent to a

12   prisoner's serious medical needs "unless the official knows of and disregards an excessive risk to

13   inmate health or safety." *Farmer*, 511 U.S. at 837.  "[T]he official must both be aware of facts

14   from which the inference could be drawn that a substantial risk of serious harm exists, and he

15   must also draw the inference." *Id.*  Further, a difference of opinion between an inmate and

16   medical authorities regarding proper medical treatment does not give rise to a 42 U.S.C. § 1983

17   claim. *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).

18         **B.**    **Defendant Sawyer**

19         Plaintiff alleges that defendant Sawyer, the orthopedist who treated plaintiff at CBCC,

20   failed to treat plaintiff's arm injury, disregarded the alleged medical opinions of other health care

21   professionals, and disregarded plaintiff's complaints about plaintiff's pain. *See* Dkt. 10, at 9, 14.

22         In support of their motion for summary judgment, defendants rely on undisputed

23   evidence that defendant Sawyer provided orthopedic consultations to plaintiff in September

24

1  2017, which included review and evaluation of plaintiff's injury, evaluation that surgery was not

2  medically necessary, and a recommendation regarding a treatment and pain management plan.

3  *See* Dkt. 35-3, 12–13, 21–22.  Defendants have provided undisputed evidence that defendant

4  Sawyer did not fail to treat plaintiff's arm injury, nor did he disregard plaintiff's complaints

5  about pain.  *See id.*

6           In response, plaintiff simply asserts that he was entitled to consult with a specialist, MRI,

7  and surgery to meet the standard of care.  *See* Dkts. 10, at 13; 34, at 17.  Plaintiff does not

8  dispute that while plaintiff was housed at CBCC, defendant Sawyer responded to all consultation

9  requests and confirmed diagnosis of plaintiff's bicep injury, noted that surgical repair of the

10  injury was not medically necessary, and provided a treatment plan for plaintiff that included rest,

11  ice, physical therapy, x-rays, and non-opioid medication for pain management.  *See* Dkt. 35-3, at

12  12–13, 21–22; *see also* Dkt. 44, at 53.  Additionally, plaintiff's evidence reflects that defendant

13  Sawyer reviewed the opinion of a Rubicon MD orthopedic surgery specialist, who also

14  concluded that plaintiff's injury "[did] not require any urgent surgery."  *Id.* at 18, 21–22.  Neither

15  Sawyer nor the Rubicon MD consultant recommended that plaintiff receive a MRI.  *Id.* at 12–13,

16  22; Dkt. 44, at 52.

17           Plaintiff comes forward with evidence that plaintiff believed that he needed surgery and a

18  MRI to treat his injury; however, plaintiff does not provide additional evidence that surgery or

19  MRI were medically necessary to treat plaintiff's bicep injury.  *See* Dkt. 10, at 8.  Furthermore,

20  although plaintiff now contends that defendants, including defendant Sawyer, failed to properly

21  diagnose plaintiff's injury, plaintiff's cited evidence in the record that "something else is going

22  on" does not establish that surgery or MRI was medically necessary to treat plaintiff's

23  undisputed injury.  Dkt. 40, at 4.

24

1    In sum, plaintiff's claim against defendant Sawyer amounts to a difference of opinion

2  between plaintiff and defendant Sawyer regarding plaintiff's treatment. A difference of opinion

3  between an inmate and medical authorities regarding proper medical treatment does not give rise

4  to a 42 U.S.C. § 1983 claim. *See Franklin*, 662 F.2d at 1344. Accordingly, there is no genuine

5  issue of material fact, and defendants' cross-motion for summary judgment should be granted as

6  to the Eighth Amendment claims against defendant Sawyer. Because defendants have shown no

7  genuine issue of material fact and that they are entitled to judgment as a matter of law, plaintiff's

8  motion for summary judgment should be denied.

9         **C.    Defendant Moore**

10    Plaintiff alleges that defendant Moore, a physician assistant who treated plaintiff at WSP,

11  did not adequately treat plaintiff's bicep injury or adequately resolve plaintiff's associated pain

12  and loss of range of motion. *See* Dkt. 10, at 11–12. Plaintiff argues that defendant Moore's

13  actions establish that defendant Moore was deliberately indifferent to plaintiff's serious medical

14  need. *See id.* at 13.

15    In support of their motion for summary judgment, defendants rely on undisputed

16  evidence that defendant Moore provided medical treatment for plaintiff's injury while plaintiff

17  was housed at WSP. *See* Dkt. 35-3, at 23, 27, 29, 38–39, 42. Defendants cite to undisputed

18  evidence that shows that defendant Moore reviewed and evaluated plaintiff's injury and

19  recommended treatments to address plaintiff's complaints about pain and loss of range of

20  motion. *See id.* Defendants have provided undisputed evidence that defendant Moore was not

21  deliberately indifferent to plaintiff's serious medical need, and that he provided plaintiff

22  adequate medical treatment while under defendant Moore's care at WSP. *See id.*

23

24

1      In response, plaintiff asserts that he was entitled to consult with a specialist, MRI, and

2  surgery to meet the standard of care. Dkts. 10, at 13; 34, at 17. Plaintiff does not dispute that he

3  received ongoing medical treatment while housed at WSP and under the care of defendant

4  Moore, including medical evaluations, responses to plaintiff's medical kites, monitoring and

5  adjustment of plaintiff's prescriptions and pain management treatment, and referrals for physical

6  therapy. *See* Dkts. 35-3, at 23, 27, 29, 38–39, 42; 35-4, at 2–4, 17–33. Additionally, plaintiff

7  does not dispute that defendant Moore requested that defendant Smith also evaluate plaintiff's

8  condition in a continued effort to treat and manage plaintiff's injury. *See* Dkts. 35-3, at 42; 35-4,

9  at 33. Nor does plaintiff dispute that defendant Moore, consulting with defendant Smith,

10  explained that it was not medically necessary for plaintiff to see a specialist or receive a MRI.

11  *See* Dkts. 35-7, at 15; 44, at 39. Plaintiff comes forward with evidence that plaintiff believed

12  that his injury required examination by specialist, MRI, and surgery; however, plaintiff does not

13  provide additional evidence that surgery or MRI were medically necessary to treat plaintiff's

14  bicep injury. *See* Dkt. 10, at 11–13.

15      As discussed above, plaintiff's claim against defendant Moore amounts to a difference of

16  opinion between plaintiff and defendant Moore regarding plaintiff's treatment. A difference of

17  opinion between an inmate and medical authorities regarding proper medical treatment does not

18  give rise to a 42 U.S.C. § 1983 claim. *See Franklin*, 662 F.2d at 1344. Accordingly, there is no

19  genuine issue of material fact, and defendants' cross-motion for summary judgment should be

20  granted as to the Eighth Amendment claims against defendant Moore. Because defendants have

21  shown no genuine issue of material fact and that they are entitled to judgment as a matter of law,

22  plaintiff's motion for summary judgment should be denied.

23

24

1            **D.**    **Defendant Smith**

2         Plaintiff claims that defendant Smith, the facility medical director at WSP, violated

3 plaintiff's Eighth Amendment rights because defendant Smith failed to provide plaintiff with a

4 MRI diagnostic and failed to recommend surgery. *See* Dkt. 10, at 12–14. Plaintiff further

5 alleges that defendant Smith falsified a clinical report regarding how plaintiff's injury occurred.

6 *See id.* at 12.

7         In support of their motion for summary judgment, defendants rely on undisputed

8 evidence that defendant Smith examined plaintiff's injury and explained to plaintiff that a MRI

9 was not medically necessary. *See* Dkt. 35-3, at 11. Defendants further rely on undisputed

10 evidence that defendant Smith consulted with DOC staff during the review and investigation of

11 plaintiff's grievances concerning plaintiff's medical care and concluded that MRI and surgery

12 were not medically necessary. *See* Dkts. 35-1, at 2; 35-7, at 16. Defendants have provided

13 undisputed evidence that defendant Smith was not deliberately indifferent to plaintiff's serious

14 medical need, that defendant Smith's actions in treating plaintiff merely amount to a difference

15 of medical opinion between plaintiff and defendant Smith, which is not actionable under 42

16 U.S.C. § 1983. *See Toguchi v. Chung*, 391 F.3d 1050, 1058 (9th Cir. 2004).

17         In response, plaintiff continues to assert that he was entitled to consult with a specialist,

18 MRI, and surgery to meet the standard of care. *See* Dkts. 10, at 11–13; 34, at 17; 40, at 6.

19 Plaintiff does not dispute that defendant Smith examined plaintiff on September 10, 2018,

20 discussed plaintiff's bicep injury and that a MRI would not help correct the injury, and

21 recommended that plaintiff follow-up with his primary care practitioner (defendant Moore) for

22 further evaluation and treatment. *See* Dkts. 35-3, at 11; 35-7, at 17. Plaintiff does not dispute

23 that defendant Smith reviewed plaintiff's health records in response to plaintiff's June 6, 2018,

24

1  grievance, and that defendant Smith stated that increased medication prescribed by defendant

2  Moore and continued home exercises should give plaintiff some relief. *See* Dkt. 35-7, at 3.

3  Further, plaintiff does not dispute that defendant Smith consulted with defendant Moore, and

4  both health care providers agreed that it was not medically necessary for plaintiff to see a

5  specialist or receive a MRI. *See id.* at 15.

6        Although plaintiff contends that defendant Smith allegedly falsified a medical record

7  reflecting how plaintiff's injury occurred, the means by which the injury occurred is not in

8  dispute and is not a material fact to the Court's analysis. The parties do not dispute that plaintiff

9  was injured. Even assuming plaintiff's claim to be true, the undisputed evidence shows that

10  defendant Smith provided medical care to plaintiff while housed at WSP.

11        Additionally, in his sur-reply to defendants' cross-motion, plaintiff submits a handwritten

12  declaration that a WSP grievance coordinator told plaintiff that defendant Smith ordered plaintiff

13  a MRI some time after June 22, 2018. *See* Dkt. 44, at 26. Because plaintiff's declaration is not

14  signed under the penalty of perjury, the Court will not consider it as evidence of his contentions

15  that defendant Smith ordered plaintiff a MRI. *See Jones*, 393 F.3d at 923. Defendant Smith

16  denies ordering any MRI and asserts that medical records do not show that a MRI was ordered

17  by any other health care provider. *See* Dkt. 44, at 47; *see also* Dkt. 35-3 (showing that none of

18  plaintiff's treating health care providers recommended or ordered a MRI). Plaintiff offers no

19  additional evidence to rebut the evidence on record that defendant Smith did not order plaintiff a

20  MRI.

21        As with defendants Sawyer and Moore, plaintiff's claim against defendant Smith

22  amounts to a difference of opinion between plaintiff and defendant Smith regarding plaintiff's

23  treatment. A difference of opinion between an inmate and medical authorities regarding proper

24

1  medical treatment does not give rise to a 42 U.S.C. § 1983 claim.  *See Franklin*, 662 F.2d at

2  1344.  Accordingly, there is no genuine issue of material fact, and defendants' cross-motion for

3  summary judgment should be granted as to the Eighth Amendment claims against defendant

4  Smith.  Because defendants have shown no genuine issue of material fact and that they are

5  entitled to judgment as a matter of law, plaintiff's motion for summary judgment should be

6  denied.

7  　　　　**E.    Defendant Kroha**

8  　　　　Other than naming defendant Kroha in his amended complaint (Dkt. 10), plaintiff fails to

9  allege any factual allegations directed to defendant Kroha's participation in the alleged denial of

10  medical treatment.  Even considering plaintiff's evidence of defendant Kroha's denial of

11  plaintiff's request for an immediate specialist consult for surgery and MRI, plaintiff fails to state

12  a claim against defendant Kroha.  *See* Dkt. 35-7, at 13.  Plaintiff fails to demonstrate how

13  defendant Kroha's denial resulted in further significant injury or the unnecessary and wanton

14  infliction of pain.  *See McGuckin*, 974 F.2d at 1059–60.  Further, plaintiff has provided

15  undisputed medical record evidence that he received medical treatment during that time,

16  including pain management, and was not denied access to medical care.  *See* Dkt. 35-3, at 10–11,

17  15, 21–22.  Plaintiff provides no additional facts or evidence to show defendant Kroha's

18  deliberate indifference to his serious medical need.  Accordingly, there is no genuine issue of

19  material fact, and defendants' cross-motion for summary judgment should granted as to the

20  Eighth Amendment claims against defendant Kroha, and plaintiff's motion for summary

21  judgment should be denied.

22

23

24

1

**F.      Defendants Holthe, Bovencamp, and Blair**

2      Plaintiff alleges that all named defendants, including defendants Bovencamp, Holthe, and

3   Blair, violated his Eighth Amendment rights because they were deliberately indifferent to

4   plaintiff's serious medical need. *See* Dkt. 10, at 13. Defendants did not respond to plaintiff's

5   Eighth Amendment claims against defendants Bovencamp, Holthe, and Blair in their cross-

6   motion for summary judgment (*see* Dkt. 37); however, the Court finds that plaintiff fails to

7   establish through undisputed evidence that these defendants independently infringed plaintiff's

8   Eighth Amendment rights.

9      Plaintiff does not dispute that defendant Holthe responded to plaintiff's complaints and

10   grievances from September 19, 2017, to February 4, 2017, requesting consult with a specialist,

11   MRI, and surgery. *See* Dkt. 35-7, at 9–12, 14. Defendant Holthe investigated plaintiff's

12   September 19, 2017, Level I grievance, reviewed plaintiff's medical record, and consulted with

13   health care staff. *See id.* at 11. In response to plaintiff's grievance, defendant Holthe indicated

14   that surgery was not medically necessary based on defendant Sawyer's evaluation, that plaintiff

15   received adequate care, and that plaintiff should contact his primary care provider with additional

16   concerns or if plaintiff's condition worsened. *See id.* Plaintiff has failed to produce evidence

17   creating a material issue of fact that Defendant Holthe subjected plaintiff to significant injury or

18   the unnecessary and wanton infliction of pain. *See McGuckin*, 974 F.2d at 1059–60.

19      Likewise, plaintiff does not dispute that defendant Bovencamp responded to plaintiff's

20   Level III grievance appeals on three separate occasions from April 16, 2018, to November 21,

21   2019. *See* Dkts. 35-7, at 1, 4, 7, 16–17; 38, at 4. Defendant Bovencamp investigated plaintiff's

22   grievances, consulted with health care staff and plaintiff's health care providers, reviewed

23   plaintiff's medical record, researched treatment for plaintiff's bicep injury, and reviewed relevant

24

1   portions of the Offender Health Plan and relevant DOC policies and protocols. *See id.*

2   Defendant Bovencamp concluded after each grievance that a MRI and surgery was not medically

3   necessary to treat plaintiff's injury and that plaintiff's grievances were not supported. *Id.* The

4   record also reflects that plaintiff continued to receive medical treatment throughout the grievance

5   process, including medical evaluations, physical therapy, and non-steroidal pain medication. *See*

6   *supra*, Factual Background, sections I, III. Plaintiff has failed to produce evidence creating a

7   material issue of fact that Defendant Bovencamp subjected plaintiff to significant injury or the

8   unnecessary and wanton infliction of pain. *See McGuckin*, 974 F.2d at 1059–60.

9          Finally, plaintiff names defendant Blair in his amended complaint (Dkt. 10); however,

10   plaintiff alleges no factual allegations that establish defendant Blair violated plaintiff's Eighth

11   Amendment Rights. The only evidence in the record regarding defendant Blair is her April 16,

12   2018, response to plaintiff's complaint regarding his March 26, 2018, re-injury to his bicep at

13   MCC and request for camera footage of the same. *See* Dkt. 35-7, at 5. In her response,

14   defendant Blair rejected plaintiff's complaint and request because the incident occurred at MCC,

15   and plaintiff now resided at WSP. *See id.* Plaintiff has failed to produce evidence creating a

16   material issue of fact that Defendant Blair disregarded an excessive risk to plaintiff's health or

17   safety or subjected plaintiff to further significant injury or the unnecessary and wanton infliction

18   of pain. *See Farmer*, 511 U.S. at 837; *McGuckin*, 974 F.2d at 1059–60.

19          As plaintiff fails to come forward with any facts from which a jury could conclude that

20   defendants Holthe, Bovencamp, and Blair acted with deliberate indifference to plaintiff's serious

21   medical need, plaintiff's motion for summary judgment should be denied, and plaintiff's Eighth

22

23

24

1   Amendment claims against defendants Holthe, Bovencamp, and Blair should be dismissed with

2   prejudice.

3       **III.    Plaintiff's Fourteenth Amendment Claim**

4       Plaintiff alleges that defendants violated his Fourteenth Amendment rights when they

5   "continuously and systematically refus[ed] to provide adequate remedial-based health care"

6   pursuant to "Washington State's prisoner health care system." Dkt. 10, at 15. Plaintiff further

7   alleges that defendant Bovencamp violated his Fourteenth Amendment rights when he "failed to

8   adequately investigate plaintiff's complaints/grievances" related to medical care sought by

9   plaintiff. Dkt. 10, at 14.

10      Defendants argue that plaintiff's claims fail as a matter of law because plaintiff does not

11  have a liberty interest at stake with respect to the inmate grievance and appeals process. Dkt. 37,

12  at 15. Defendants further argue that defendants Bovencamp, Holthe, and Blair provided prompt

13  and appropriate responses to plaintiff's grievances. *See id.* at 6. The undersigned agrees with

14  defendants and finds that plaintiff does not have due process rights with respect to the inmate

15  grievance and appeals process.

16      To state a procedural due process claim, plaintiff must allege: "(1) a liberty or property

17  interest protected by the Constitution; (2) a deprivation of the interest by the government; [and]

18  (3) lack of process." *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000). Plaintiff does not

19  have a stand-alone due process right to the adequate administration of the grievance process.

20  *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals

21  because no entitlement to a specific grievance procedure); *Mann v. Adams*, 855 F.2d 639, 640

22  (9th Cir. 1988) (there is no legitimate claim of entitlement to a grievance procedure); *see also*

23  *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir. 1993) (actions in reviewing prisoner's

24

1  administrative appeal cannot serve as the basis for liability under a § 1983 action).  Because

2  there is no right to any particular grievance process, plaintiff cannot state a claim against

3  defendants for failing to process, investigate, or ignore his grievances.

4        The undisputed evidence shows that plaintiff submitted numerous complaints and

5  grievances from September 18, 2017, to October 2, 2018.  *See* Dkts. 35-1; 35-7.  Furthermore,

6  the undisputed evidence shows that defendants Bovencamp, Holthe, and Blair respectively

7  investigated and responded to these complaints and grievances.  *See id.*  Plaintiff contends that

8  all named defendants denied him due process "with willful and ill intent" and that defendant

9  Bovencamp failed to investigate plaintiff's grievances (Dkt. 10, at 14); however, plaintiff does

10  not have a due process right to the administration of the grievance process.  Because of this,

11  plaintiff fails to raise a genuine issue of material fact and to show that he is entitled to judgment

12  as a matter of law.

13        Furthermore, as discussed above, the Courts finds that defendants were not deliberately

14  indifferent to plaintiff's serious medical need and that plaintiff received adequate medical care

15  from DOC health care providers and defendants Sawyer, Moore, and Smith.  *See supra*,

16  Discussion, section II.  Accordingly, defendants did not deny plaintiff medical care in violation

17  of plaintiff's Fourteenth Amendment due process rights.  *See Toguchi*, 391 F.3d at 1060 (noting

18  that a due process claim fails for the same reasons a deliberate indifference claim fails); *Ortiz v.*

19  *City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989).

20        Accordingly, as there is no genuine issue of material fact, defendants' cross-motion for

21  summary judgment should be granted, and plaintiff's motion for summary judgment should be

22  denied.

23

24

1

### IIII.    Outstanding Discovery

2        On December 3, 2019, the Court ordered defendants to submit responses to plaintiff's

3    outstanding discovery requests on or before January 10, 2020. *See* Dkt. 43. In his sur-reply,

4    plaintiff claims that defendants acted in "bad faith" in failing to supply satisfactory responses to

5    his discovery requests and moves the Court to appoint an arbitrator to mediate discovery issues.

6    *See* Dkt. 44, at 1–2, 5. Plaintiff does not certify that he attempted to meet and confer with

7    defendants regarding discovery response deficiencies as required by Fed. R. Civ. P. 37.

8    Defendants assert that they responded to plaintiff's requests for production and interrogatories

9    and therein confirmed that certain requested documents do not exist. *See* Dkt. 45, at 3–4.

10        Specifically, plaintiff argues that defendants refused to "answer how many injuries have

11    been successfully fixed at the facilities to date." Dkt. 44, at 3. Plaintiff does not provide any

12    evidence that he propounded such a request on defendants. Additionally, plaintiff claims that

13    defendants improperly withheld defendant Smith's resume in response to plaintiff's request for

14    production. *See id.* at 4, 31. Plaintiff further claims that certain requested materials exist but that

15    defendants "chose to deny or hide the evidence." *Id.* at 4. Plaintiff's only record in support of

16    this contention is plaintiff's unsworn statement (*see id.* at 26), which the Court will not consider

17    as evidence of his contentions. *See Jones*, 393 F.3d at 923. Finally, plaintiff claims that many of

18    his "requests [were] unreasonably denied" by defendants; however, plaintiff does not specify

19    which requests were denied other than defendant Smith's resume. *Id.* at 4. The Court, having

20    carefully considered plaintiff's motion, finds that the evidence sought by plaintiff does not

21    impact the outcome of defendant's summary judgment motion. Even if produced, defendant

22    Smith's resume is not a material fact to the Court's analysis of whether defendant Smith acted

23    with deliberate indifference to plaintiff's serious medical need. Furthermore, additional evidence

24

1   regarding successful treatment of other individuals' injuries in DOC facilities is not a material

2   fact to the Court's analysis of whether defendants acted with deliberate indifference to plaintiff's

3   serious medical need.  Finally, plaintiff does not provide evidence that defendants acted in bad

4   faith in responding to plaintiff's discovery requests, nor does plaintiff provide evidence that

5   defendants hid or denied material evidence.

6          Because the disputed discovery is not material to the Court's analysis of the parties' cross

7   motions, the Court declines to appoint an arbitrator.  Plaintiff does not provide any other basis

8   for his request for arbitration.  Accordingly, the Court denies plaintiff's motion to appoint an

9   arbitrator to mediate the disputed discovery responses.

10         **IVI.**    **Qualified Immunity**

11          Because the Court has already determined defendants are entitled to summary judgment

12   as to all of plaintiff's underlying claims, the Court declines to determine whether defendants are

13   entitled to qualified immunity from liability for damages.

14         **VI.**    ***In Forma Pauperis* on Appeal**

15          The Court recommends revoking plaintiff's *in forma pauperis* ("IFP") status for purposes

16   of appeal.  IFP status on appeal shall not be granted if the district court certifies "before or after

17   the notice of appeal is filed" "that the appeal is not taken in good faith[.]" Fed. R. App. P.

18   24(a)(3)(A); *see also* 28 U.S.C. § 1915(a)(3).  A plaintiff satisfies the "good faith" requirement if

19   he seeks review of an issue that is "not frivolous," and an appeal is frivolous where it lacks any

20   arguable basis in law or fact.  *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977); *Neitzke v.*

21   *Williams*, 490 U.S. 319, 325 (1989).

22          Here, as noted, plaintiff fails to identify a genuine issue of material fact and the law is

23   clear that defendants did not violate his Eighth or Fourteenth Amendment rights.  As such, the

24

1   undersigned recommends that plaintiff's *in forma pauperis* status be revoked for purposes of any

2   appeal.

3                                  **CONCLUSION**

4         The undersigned recommends that defendants' motions for summary judgment (Dkt. 37)

5   be granted, that plaintiff summary judgment motion (Dkt. 34) be denied, that plaintiff's claims

6   be dismissed with prejudice, and that plaintiff's *in forma pauperis* status be revoked for any

7   appeal.

8         Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

9   fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

10   6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

11   review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

12   of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

13   *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

14   imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **April 24,**

15   **2020**, as noted in the caption.

16         Dated this 6th day of April, 2020.

17

18

19                                J. Richard Creatura

20                                United States Magistrate Judge

21

22

23

24